UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY


UNITED STATES OF AMERICA     :     Criminal No. 08-346 (SDW)

          v.          :

KEITH STEWART,          :
 a/k/a "Nutty," and
SHEDRICK CRAFTON,     :     Hon. Susan D. Wigenton, U.S.D.J.
 a/k/a "Charlie"


_____

GOVERNMENT'S TRIAL BRIEF

_____


RALPH J. MARRA, JR.
Acting United States Attorney
970 Broad Street
Newark, New Jersey  07102
(973) 645-2700


On the Brief:

MATTHEW E. BECK
Assistant U.S. Attorney

DENNIS C. CARLETTA
Assistant U.S. Attorney

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.  CASE BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.  PROCEDURAL MATTERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.  Custody . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.  Restraints . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      C.  Defense Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      D.  Peremptory Challenges. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

V.  LEGAL MATTERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      A.  The Statutes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          1.  Conspiracy to Distribute One Kilogram or More of Heroin and Five Kilograms or More of Cocaine (21 U.S.C. § 846) . . . . . . . . . . . . . . . . . . . . . 9

             a.  Elements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

             b.  The Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

             c.  Type and Quantity of Controlled Substance . . . . . . . . . . . . . . . . . . . . 11

          2.  Possession of a Controlled Substance with the Intent to Distribute (21 U.S.C. § 841(a)(1) and (b)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

             a.  Statute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

             b.  Elements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

             c.  Possession and Intent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      B.  Anticipated Defenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

V.  EVIDENTIARY MATTERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      A.  The Recordings are Not Hearsay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

          1.  Statements by the Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

          2.  Statements by Co-Conspirators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

              a.  The Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

             b.  In Furtherance of the Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . 16

      c.  During the Course of the Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . 16

      d.  Admission of Co-Conspirator Statements Does Not Implicate the
Confrontation Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

B.  Defendants Cannot Avail Themselves of Rule 801(d)(2) to Introduce Their
Own Statements or Those of Their Co-Conspirators . . . . . . . . . . . . . . . . . . . . . . 17

C.  Expert Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    1.  Special Agent William Brinker . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

D.  Authentication and Identification of the Recorded Conversations . . . . . . . 21

E.  Transcripts in Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

F.  Self-Authenticating Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    1.  Public Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    2.  Business Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

G.  Records Seized from Defendants are Not Hearsay . . . . . . . . . . . . . . . . . . . . 25

H.  Photocopies and Duplicates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

I.  Charts and Summaries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

J.  Use of Evidence in Opening Statements and Visual Aids in Opening
    Statements and Closing Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

K.  Impeachment by Conviction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

L.  Use Of Leading Questions On Direct Examination . . . . . . . . . . . . . . . . . . . 30

M.  Presentation of Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

N.  Present Sense Impressions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

O.  Reciprocal Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

I.          **INTRODUCTION**

      The United States of America, by and through Ralph J. Marra, Jr., Acting United States Attorney for the District of New Jersey (Assistant United States Attorneys Matthew E. Beck and Dennis C. Carletta, appearing) hereby submits its Trial Brief to assist the Court in trial of the above-captioned matter.

II.         **CASE BACKGROUND**

      On February 5, 2009, a federal grand jury sitting in Newark, New Jersey, returned a two-count Second Superseding Indictment (hereinafter, the "Indictment") against Keith Stewart (hereinafter, "Stewart") and Shedrick Crafton (hereinafter, "Crafton" and sometimes referred to collectively with Stewart as the "Defendants"). Count One of the Indictment charged the Defendants with conspiracy to distribute one kilogram or more of heroin and five kilograms or more of cocaine in violation of Title 21, United States Code, Section 846. The Defendants are alleged to have conspired with each other and others throughout Essex County, in the District of New Jersey and elsewhere, from at least as early as August 2006, through on or about February 13, 2008.

      Count Two of the Indictment charges defendant Keith Stewart with the knowing and intentional distribution and possession with the intent to distribute one hundred grams or more of heroin in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), and Title 18, United States Code, Section 2. This charge relates to approximately 147 grams of heroin that was seized from Stewart's house when law enforcement executed a search warrant there on February 13, 2008.

      Pursuant to Court orders dated November 12, 2008, and February 3, 2009 (collectively, the "Pre-Trial Order"), pre-trial motions have been scheduled for March 5, 2009, with a jury trial date set for March 10, 2009. The Government expects that trial will last approximately four weeks. In order to assist the Court in the upcoming matter, the Government hereby submits its Trial Brief.

- 4 -

III.            **FACTUAL BACKGROUND**

The presentation of the Government's case will center around the narcotics distribution activities of defendants Stewart and Crafton.  The Government expects that the evidence at trial will show that:

From at least as early as August 2006 through on or about February 13, 2008, the Defendants conspired with each other and others to distribute in excess of one kilogram of heroin and in excess of five kilograms of cocaine in Essex County, New Jersey and elsewhere. Stewart and Crafton were both significant narcotics dealers in the Newark area who worked together to distribute heroin and cocaine.  Most of the heroin that the Defendants sold was obtained by Stewart through various suppliers in New York.  These suppliers would deliver to Stewart large shipments of prepackaged "bricks" of heroin.  Once received, Stewart would either: (1) sell the bricks of heroin himself to purchasers, (2) provide them to Crafton to sell to purchasers, or (3) provide them to former co-defendant Sharod Hester (hereinafter, "Hester") for sale to purchasers.  As for the cocaine, both Stewart and Crafton had different suppliers who on occasion would supply them large amounts of cocaine.  Stewart and Crafton would regularly discuss with each other what prices their various suppliers were offering to make sure that they were buying the cocaine at the lowest possible price.  Both Defendants would sell cocaine directly to purchasers.   Stewart primarily based his operations out of two locations: (1) his home which he owned at 106 Richelieu Terrace, Newark, New Jersey (hereinafter, "106 Richelieu") and (2) Hester's apartment which was located in a building Stewart owned at 325 South 19th Street, Newark, New Jersey (hereinafter, "325 South 19th Street").  Crafton based his operations out of Apartment 2, 197 Alexander Street, Newark, New Jersey (hereinafter, "197 Alexander").

Beginning in August 2007, ICE commenced an investigation of Stewart, Crafton and others.  That investigation began, in part, based on information provided by and consensual telephone calls made by a Confidential Informant (the "CI") who had known Stewart and

Crafton for a lengthy period of time and had significant knowledge about their narcotics activities.  As part of the investigation, at various times between November 15, 2007, and February 14, 2008, law enforcement intercepted communications over Crafton's cellular telephone and three of Stewart's cellular telephones, pursuant to orders issued by this Court.[1] Over the course of the wiretap, law enforcement intercepted over sixteen hundred calls that were pertinent to the investigation.  These calls provide substantial and detailed evidence regarding Stewart and Crafton's narcotics activities.

On February 13, 2008, Keith Stewart, Shedrick Crafton, and others were arrested. In concert with the arrests, law enforcement also executed search warrants at 106 Richelieu and 197 Alexander.  Inside 106 Richelieu Terrace, law enforcement recovered, among other things, approximately 100 bricks of heroin which contained approximately 147 grams of heroin, a number of drug ledgers, and approximately seven cellular telephones.  Inside 197 Alexander, law enforcement recovered, among other things, four cellular telephones.

The Government expects that the principal sources of evidence at trial will be (1) the recordings of over one hundred wiretap conversations, (2) tangible evidence including drugs and narcotics related paraphernalia recovered from the Defendants and their residences, (3) law enforcement testimony about surveillance, (4) expert testimony about the wiretap investigation; and (5) testimony from cooperating witness(es) who participated in the criminal activities with the Defendants.

---

1.  Interception first began over just Shedrick Crafton's telephone.  On December 18, 2007, law enforcement also began intercepting certain of Keith Stewart's telephones.  Additionally, while the Court authorized interception over four of Stewart's cellular telephones, law enforcement never intercepted communications over one of those four phones.

IV.                **PROCEDURAL MATTERS**

    **A.  Custody**

    Defendants Stewart and Crafton are currently in custody.

    **B.  Restraints**

    As with many incarcerated defendants at trial, the Government understands that the Marshals may wish to keep defendants Stewart and Crafton in leg restraints during the course of the proceedings as a security measure.  The Government does not object to this potential recommendation, assuming certain procedural and legal standards are met.

    In consideration of such a request by the Marshals, the Court must take steps, such as ordering the placement of drapes around both counsel tables, to insure that the jury does not observe the shackles.  Deck v. Missouri, 544 U.S. 622 (2005).  Further, if the Court is to allow the Marshals to keep the Defendants in the leg restraints, the Court must make particularized findings as to why it is warranted in this case and cannot simply defer to the Marshals' plans or policy.  Deck, 544 U.S. at 634, 635; United States v. Salehi, 187 Fed. Appx. 157, 2006 WL 1759855, *13-14 (3d Cir. June 28, 2006). Without making these findings, the Third Circuit "will assume" that the Court erred.  Id.

    Consequently, the Government requests that the Court consider the following rationale when contemplating the Marshals' request:

    (1)  The Defendants are charged with serious narcotics offenses.  During the course of the investigation leading to their arrest, at least one of their known associates was shot and killed, purportedly by another narcotics affiliated assailant.  During the investigation of that incident, firearms paraphernalia was recovered, to include 32 shotgun shells and 46 9mm Luger hollow point rounds;

    (2)  The Defendants face mandatory minimum terms of imprisonment of at least 20 years and a maximum of life, so their incentive to flee or act up are strong; and

(3)  The Government expects testimony by several individuals formerly affiliated with the Defendants in their narcotics related activities.  The potential dangers in this situation warrant shackling so that the Marshals can insure courtroom safety and decorum.

### C.  Defense Counsel

Linwood A. Jones, Esq., represents Keith Stewart.  Anna G. Cominsky, Esq., represents Shedrick Crafton.

### D.  Peremptory Challenges

Pursuant to Federal Rule of Criminal Procedure 24(b)(2), the government ordinarily receives six (6) peremptory challenges and the defense receives a total of ten (10) peremptory challenges.  Nevertheless, in a multi-defendant case, the Court may allow additional challenges to the defense and may permit the defendants to exercise the challenges separately or jointly.  In order to save time and judicial resources, and to ensure the orderly selection of jurors, the Government opposes additional peremptory challenges in this matter and requests that the Defendants exercise their ten challenges jointly.

"There is no 'right' to additional peremptory challenges.  The award of challenges is permissive, not mandatory, and rests in the trial court's sound discretion."  United States v. McClendon, 782 F.2d 785, 787 (9th Cir. 1986), citing United States v. Hueftle, 687 F.2d 1305, 1309 (10th Cir. 1982); United States v. Haldeman, 559 F.2d 31, 79 (D.C. Cir. 1976); see Fed. R. Crim. Pro. 24(b).

In the alternative, if the Court is inclined to grant additional peremptory challenges to the defense, the Government requests that it receive an increased number of challenges as well.  See, United States v. Vaccaro, 816 F.2d 443, 456 (9th Cir. 1987), overruled on other grounds, Huddleston v. United States, 485 U.S. 681 (1988) (approving trial court's discretion to condition the grant of additional peremptory challenges to the defense upon a stipulation for more peremptory challenges for the government).

- 8 -

V.          **LEGAL MATTERS**

### A.  The Statutes

1.  Conspiracy to Distribute One Kilogram or More of Heroin and Five Kilograms or More of Cocaine (21 U.S.C. § 846)

Title 21, United States Code, Section 846, provides in pertinent part that:

Any person who . . . conspires to commit any offense defined in this subchapter . . . is guilty of a crime against the United States.

One of the provisions of the subchapter, Section 841, provides in pertinent part that:

[I]t shall be unlawful for any person knowingly or intentionally . . . to . . . distribute . . . or to possess with intent to distribute . . . a controlled substance.

Heroin is a schedule I controlled substance.  If a violation of Sections 846 and 841(a) involves one kilogram or more of a mixture or substance containing heroin, the penalties, as set forth in 21 U.S.C. § 841(b)(1)(A), provide for a mandatory term of ten years' imprisonment and a maximum term of life.

Cocaine is a schedule II controlled substance.  If a violation of Sections 846 and 841(a) involves five kilograms or more of a mixture or substance containing cocaine, the penalties, as set forth in 21 U.S.C. § 841(b)(1)(A), provide for a mandatory term of ten years' imprisonment and a maximum term of life.

a.  Elements

The essential elements of the narcotics conspiracy are:

First: That a conspiracy to distribute or possess with intent to distribute a controlled substance was formed, reached or entered into by two or more persons; and

Second: That at some time during the existence or life of the conspiracy, the defendant knew the purpose of the agreement, and then deliberately joined the conspiracy.

b.  The Conspiracy

Since conspiracy is a separate and distinct crime from the crime that is the object of the conspiracy, it does not matter whether the Defendants or their co-conspirators actually completed the object of the conspiracy.  United States v. Pappas, 445 F.2d 1194, 1198 (3d Cir. 1971); Pinkerton v. United States, 328 U.S. 640 (1946).

The Government need not prove the commission of any overt acts in furtherance of the conspiracy.  United States v. Shabani, 513 U.S. 10, 14 (1994).

A conspiracy is nothing more than a combination of or agreement by two or more people, working together, to accomplish some unlawful purpose, or to accomplish some lawful purpose by unlawful means.  The essence of a conspiracy is a unity of purpose or a common design among all those agreeing to achieve an unlawful objective.  United States v. Kates, 508 F.2d 308, 310-311 (3d Cir. 1975).  The government must show that the conspirators shared a unity of purpose, the intent to achieve a common goal, and an agreement to work together toward the goal.  United States v. Cartwright, 359 F.3d 281, 186 (3d Cir. 2004).  A formal agreement need not be established; rather a person's involvement in a conspiracy may be inferred from circumstantial evidence.  Kates, 508 F.2d at 310, citing Glasser v. United States, 315 U.S. 60, 80 (1942).  It is not necessary to prove that a defendant participated in all conduct or every transaction involved in the conspiracy.  Id., citing United States v. Hutul, 416 F.2d 607, 619 (7th Cir. 1969).  Nor is it necessary for each defendant to know the identities of his co-conspirators (Id., citing United States v. Andolschek, 142 F.2d 503, 507 (2d Cir. 1944)) or the precise role played by his co-conspirators.  Id. citing Sears v. United States, 343 F.2d 139, 141 (5th Cir. 1965).  The Government need only prove that each defendant conspired with one other person.  United States v. Obialo, 23 F.3d 69, 73 (3d Cir. 1994).  "Evidence of even a slight connection, if proven beyond a reasonable doubt, is sufficient to convict a defendant of knowingly participating in an established conspiracy."  United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991).  Someone who joins a conspiracy after it is formed, or participates to a more

- 10 -

limited degree than other co-conspirators, is equally as culpable.  United States v. Berkery, 889 F.2d 1281, 1284 (3d Cir. 1989).

Simply put, in order to convict the Defendants of the conspiracy charged in Count One, the government must prove as to each defendant that (1) he entered into an agreement ("with someone-anyone" Obialo, 23 F.3d at 73); and (2) knew the agreement had the specific unlawful purpose charged in the indictment.  United States v. Thomas, 114 F.3d 403, 405 (3d Cir. 1997), quoting United States v. Wexler, 838 F.2d 88, 91 (3d Cir. 1988).

c.  Type and Quantity of the Controlled Substance

The Government must prove that one of the objects of the conspiracy was to distribute some type of controlled substance.  United States v. Barbosa, 271 F.3d 438, 458 (3d Cir. 2001).  The Government need not prove that the defendant knew the type and quantity of drugs in order to obtain a verdict of guilty.  United States v. Sheppard, 219 F.3d 766, 769 (8th Cir. 2000).  However, under the Supreme Court's rule announced in Apprendi v. New Jersey, 530 U.S. 466 (2000), since the quantity of drugs in this case (one or more kilograms of heroin or five or more kilograms of cocaine) increases the statutory maximum penalty, the jury must make a finding as to the amount of drugs for the enhanced penalties of 21 U.S.C. § 841(b)(1)(A) to apply.  United States v. Henry, 282 F.3d 242, 247-248 (3d Cir. 2002).  The Government will prepare a special verdict sheet which in which the jury will be asked whether or not the Government has proven drug quantity beyond a reasonable doubt.

2.  Possession of a Controlled Substance with the Intent to Distribute (21 U.S.C. § 841(a)(1) and (b)(1)(B))

Defendant Keith Stewart is charged in Count Two with the knowing and intentional distribution and possession with the intent to distribute one hundred grams or more of heroin.  The charge arises out of narcotics evidence, specifically 147 grams of heroin, recovered during the execution of a search warrant at 106 Richelieu on the date of defendant Stewart's arrest.

- 11 -

a.  Statute

Pursuant to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A), "it is unlawful for any person [to] knowingly or intentionally . . . distribute . . . or possess with the intent to... distribute...100 grams or more of a mixture or substance . . .containing a detectable amount of heroin."  The violation of this provision carries a statutory minimum sentence of 5 years imprisonment and a statutory maximum sentence of life imprisonment.

b.  Elements

The essential elements of this offense are:

First:  That the defendant distributed or possessed a controlled substance;

Second:  That the defendant knew he possessed a controlled substance; and

Third:  That the defendant distributed or possessed a controlled substance with the intent to distribute it; and

Fourth:  That the substance was more than one hundred grams of heroin.

c.  Possession and Intent

A person acts "knowingly" if he acts voluntarily or on purpose, and not because of mistake or accident or other innocent reason.  The purpose of adding the word "knowingly" is to ensure that no one will be convicted for an act done because of mistake or accident, or other innocent reason.  Knowledge and intent may be inferred from all the surrounding circumstances. A particular defendant's words or actions, or statements or acts that were omitted, as well as other facts and circumstances in evidence and the reasonable inferences from that evidence may be considered to determine the particular defendant's state of mind, intent and knowledge.

Possession can be either actual or constructive.  A person actually possesses something when that person knowingly has direct control over the thing.  A person constructively possesses something when, even though that person may not have direct control over it, that person knowingly has access to it and has the power and intention to exercise control over it, either directly or through someone else.  Possession can also be sole or joint - that is, one

- 12 -

person may be in possession of the controlled substance, or two or more people might be in possession of the controlled substance.

### B.  Anticipated Defenses

The Government expects that defendant Crafton will raise a claim of mental disease, defect and/or mental condition bearing on the issue of guilt.

In addition, the Government expects that defendants Stewart and Crafton will: (1) challenge the validity and authenticity of the intercepted wiretap communications; (2) challenge the Government's contention that the intercepted conversations relate to drug distribution; and (3) claim that the Defendants were discussing legitimate business activities.

**VI.**     **EVIDENTIARY MATTERS**

**A. The Recordings are Not Hearsay**

The recordings of conversations to be offered into evidence by the Government were made pursuant to court order.  The statements contained in the recordings were made by the Defendants and/or their co-conspirators.  For the reasons set forth below, the statements are admissible, and not barred by the hearsay rule.

1. Statements by the Defendants

Recorded statements of the Defendants are admissible as admissions.  Federal Rule of Evidence 801(d)(2)(A) provides that admissions by a party-opponent are not hearsay.  In order to qualify as an admission, the statement must be offered against a party and be the party's own statement.  Fed. R. Evid. 801(d)(2)(A).  "No guarantee of trustworthiness is required in the case of an admission."  Advisory Committee Notes, Subdivision (d)(2).  "Admissions...are not admitted because of confidence in their inherent reliability.  They are instead admitted because a party will not be heard to object that s/he is unworthy of credence."  United States v. Ammar, 714 F.2d 238, 254 (3d Cir. 1983).  Thus, any statement by defendants Stewart or Crafton offered by the Government is not hearsay and is admissible against the defendant who made the statement.

2. Statements by Co-Conspirators

The United States Supreme Court has long-recognized the unique probative value of co-conspirator statements:

> Because they are made while the conspiracy is in progress, such statements provide evidence of the conspiracy's context that cannot be replicated, even if the declarant testifies to the same matters in court. . . . Conspirators are likely to speak differently when talking to each other in furtherance of their illegal aims than when testifying on the witness stand.

United States v. Inadi, 475 U.S. 387, 395 (1986).

It is well-established that the declarations of one conspirator in furtherance of the objects of the conspiracy, made to a third party, are admissible against his co-conspirators.

- 14 -

United States v. Trowery, 542 F.2d 623, 626 (3d Cir. 1976).  The justification for this rule comes from the law of agency.  "Its rationale is the common sense appreciation that a person who has authorized another to speak or to act to some joint end will be held responsible for what is later said or done by his agent, whether in his presence or not."  Trowery, 542 F.2d at 626.

No foundation of personal knowledge is required before co-conspirator statements can be admitted.  "[I]t is clear from the Advisory Committee Notes that the drafters intended that the personal knowledge foundation requirement of Rule 602 should apply to hearsay statements admissible as exceptions under Rules 803 and 804 but not to admissions (including coconspirator statements) admissible under Rule 802(d)(2)."  Ammar, 714 F.2d 238 at 254.

Federal Rule of Evidence 801(d)(2)(E) provides that "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy" is not hearsay.  Co-conspirator statements are admissible against all defendants who had knowledge of, and participated in, the conspiracy.   The requirements of the rule are met if the person against whom the statement is offered (1) participated in the conspiracy, (2) the statement was made in furtherance of the conspiracy, and (3) the conspiracy was still in progress at the time the statement was made.  United States v. Levy, 865 F.2d 551, 556 (3d Cir. 1989).

     a.  The Conspiracy

The existence of a conspiracy involving the defendant need be established only by a preponderance of the evidence.  Bourjaily v. United States, 483 U.S. 171, 175-176 (1987).  Although the court must consider the co-conspirator statement itself in making its determination, Bourjaily, 483 U.S. at 180-81[2] there must be some "independent corroboration" of the opponent's knowledge of and participation in the conspiracy.  In re Flat Glass Antitrust Litigation, 385 F.3d 350, 375 (3d Cir.), cert. denied, 544 U.S. 948 (2005).  See also F.R.E.

---

2.  Bourjaily overturned the earlier rule in this Circuit that the co-conspirator's statement could not be used to establish the existence of a conspiracy.  United States v. Gambino, 926 F.2d 1355, 1361 (3d Cir. 1991).

801(d)(e)(E) ("The contents of the statement shall be considered but are not alone sufficient to establish. . .the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdividion (E).").

It is the responsibility of the judge, and not the jury, to determine whether a sufficient foundation has been established, pursuant to Fed. R. Evid. 104, to admit a co-conspirator statement. Bourjaily, 483 U.S. at 175-176.   The Third Circuit has regularly upheld the trial court's exercise of discretion in admitting co-conspirator statements without a pretrial hearing subject to subsequent presentation of the requisite foundation evidence.   United States v. Continental Group, 603 F.2d 444, 456 (3d Cir. 1979);   United States v. Bey, 437 F.2d 188, 191 (3d Cir. 1971).   See also United States v. Feliziani, 472 F. Supp. 1037, 1046 (E.D. Pa. 1979), aff'd, 622 F.2d 580 (3d Cir. 1980);   United States v. Sinclair, 433 F. Supp. 1180, 1190-91 (D. Del.), aff'd, 566 F.2d 1171 (3d Cir. 1977).

b.  In Furtherance of the Conspiracy

"Statements between conspirators which provide reassurance, serve to maintain trust and cohesiveness among them or to inform each other of the current status of the conspiracy further the ends of the conspiracy and are admissible so long as the other requirements of Rule 801(d)(2)(E) are met.  Ammar, 714 F.3d at 252.   "The declarant's intent, and not the actual effect, is what is important."   United States v. Arias-Villanueva, 998 F.2d 1491, 1502 (9th Cir. 1993).

c.  During the Course of the Conspiracy

Statements or acts of conspirators are admissible against all the co-conspirators even if they were made or done before the defendant joins the conspiracy.   United States v. U.S. Gypsum Co., 333 U.S. 364, 393 (1948); United States v. Jannotti, 729 F.2d 213, 222 (3d Cir. 1984); United States v. Pungitore, 910 F.2d 1084, 1147 (3d Cir. 1990); United States v. Badalamenti, 794 F.2d 821, 826-827 (2d Cir. 1986); United States v. Segura-Gallegos, 41 F.3d 1266, 1272 (9th Cir. 1994); United States v. Jackson, 757 F.2d 1486, 1490 (4th Cir. 1985);

United States v. Coe, 718 F.2d 830, 839 (7th Cir. 1983); United States v. Holder, 652 F.2d 449, 451 (5th Cir. 1981); United States v. Anderson, 532 F.2d 1218, 1230 (9th Cir. 1976).

> d.  Admission of Co-Conspirator Statements Does Not Implicate the Confrontation Clause.

In seeking admission of co-conspirator statements pursuant to Rule 801(d)(2)(E), the proponent need not show that the declarant is unavailable.  Inadi, 475 U.S. 387 (1986). Admission of co-conspirator statements does not violate the confrontation clause.  Bourjaily, 483 U.S. 171 at 181-182.  This rule remains unaffected by the Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), because the statements are not "testimonial."  United States v. Hendricks, 395 F.3d 174, 175, 181 (3d Cir. 2005) (holding, in government interlocutory appeal, that it was error for District Court to exclude wiretap recordings on Confrontation Clause grounds).  United States v. Ward, 793 F.2d 551 (3d Ci. 1986) (rejecting Bruton challenge to admission of co-conspirator statement).

### B.  Defendants Cannot Avail Themselves of Rule 801(d)(2) to Introduce Their Own Statements or Those of Their Co-Conspirators

While the Government will seek admission of the intercepted conversations as admissions of a party opponent and co-conspirator statements, the Defendants cannot avail themselves of these rules.  Rule 802(d)(2) provides a series of exclusions to the hearsay rule. Rule 801(d)(2)(A) provides that statements made by a party are admissible, but only when offered *against* the party by a party-opponent.  Thus, the Defendants cannot avail themselves of this rule.  The government expects that this issue may be presented if either defendant seeks admission of his own statements to law enforcement.

Similarly, the Defendants cannot seek admission of the recorded conversations on the grounds that they are co-conspirator statements.  As set forth above, Rule 801(d)(2)(E) allows admission of these statements against a party when the declarant is a co-conspirator of the party against whom the statement is admitted.  Since the United States is not a co-conspirator in this case, no statement can be introduced against the Government under this Rule.

### C.  Expert Testimony

1.  <u>Special Agent William Brinker</u>

At trial, the government will offer DEA Special Agent William Brinker as an expert in the various methods used by narcotics traffickers to conduct their narcotics related operations.  Specifically, SA Brinker's expected testimony will discuss, *inter alia*,  the packaging, manufacture, pricing, storage, record keeping, transportation and distribution of drugs and drug proceeds, as well as the manner and means used by narcotics traffickers to communicate using coded and cryptic language.

Federal Rule of Evidence 702 governs expert witness testimony:

> If scientific, technical, or <u>other specialized knowledge</u> will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." (Emphasis added).

The Supreme Court held in <u>Daubert v. Merrell Dow</u>, 509 U.S. 579, 597 (1993), that expert testimony is admissible only if it is reliable and relevant.  <u>Daubert</u> further gave trial courts the "flexible" gate-keeping function of ensuring that expert witness testimony is reliable, relevant and helpful to assisting the jury's assessment of the proffered evidence.  *Id*. at 593 – 594.  The Court then held in <u>Kumho Tire Co., Ltd. v. Carmichael,</u> 526 U.S. 137, 141 (1999), that the trial court's gate-keeping responsibility applies to expertise beyond solely "scientific" knowledge, expanding the court's obligation to "technical" and other "specialized" knowledge of expert testimony.

Rule 702 is part of the "liberal thrust" of the Federal Rules of Evidence and the "general approach of relaxing the traditional barriers to 'opinion' testimony".  <u>Daubert</u> at 588, <u>quoting</u> <u>Beech Aircraft Corp. v. Rainey</u>, 488 U.S. 153, 169 (1988).  The Third Circuit has also applied this 'liberal thrust' to Rule 702 with their broad-minded admission of expert testimony.

See, Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir. 1998) (stating, the "liberal admissibility of expert testimony reaches to the substantive and formal fitness of experts); Holbrook v. Lykes Bros. S.S. Co., Inc., 80 F.3d 777, 782 (3d Cir. 1996) (acknowledging the Third Circuit's liberal approach to admitting expert testimony).

Significant practical experience through employment can properly qualify an individual as an expert.  Waldorf at 625-626.  Formal education is not necessarily required of the expert witness, although the Third Circuit has held that the testifying individual must have more expertise in the area being testified to than the average lay person.  Aloe Coal Co. v. Clark Equipment Co., 816 F.2d 110, 114 (3d Cir. 1987).  The Third Circuit has held that the two requirements for expert testimony based on Rule 702 are: (1) the person proffering specialized knowledge is an expert; and (2) the expert testimony assists the trier of fact in their understanding.  See In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 741 (3d Cir. 1994); see also Daubert at 589.  As long as the expert meets the standards of relevance and reliability as established by Daubert, the trial court has great discretion whether to admit the expert testimony. See U.S. v. Watson, 260 F.3d 301, 307-308 (3d. Cir. 2001) (holding that a narcotics agent was properly qualified to testify regarding drug activity operations based on his professional experiences regarding drug inspection, knowledge of packaging and distribution, execution of search warrants for drugs, undercover drug purchases, making 200 plus arrests for crack, and working as drug investigator for eight years); see also U.S. v. Tocco, 200 F.3d 401, 419 (6th Cir. 2000) (upholding FBI Agent as an expert witness on organized crime noting Agent's extensive experience in investigating organized crime, including 22 years with the FBI, 17 of which were in organized crime investigations); U.S. v. Navarro, 90 F.3d 1245, 1261 (7th Cir. 1996) (permitting DEA Agent to testify as an expert in narcotics-related criminal cases based on his domestic and international undercover work and surveillance, and based on his education, experience and training under Rule 702).

- 19 -

Experts are permitted to testify to the meaning of coded language on a case-by-case basis at the discretion of the trial court.  The Third Circuit has noted that it is well established under Rule 702 that "experienced government agents" can testify to the meaning of coded drug language in order to assist the trier of fact in understanding the meaning of the words and phrases.  U.S. v. Gibbs, 190 F.3d 188, 211 (3d Cir. 1999); see also U.S. v. Theodoropoulos, 866 F.2d 587, 590 (3d Cir. 1989) (allowing expert to testify regarding meaning of drug dealers' coded conversations), overruled on other grounds by United States v. Price, 13 F.3d 711, 727 (3d Cir.1994); U.S. v. Fletcher, 616 F. Supp 16, 20 (E.D. Pa., 1985) (finding Special Agent qualified as an expert on drug terminology and thus permitting opinion on coded language contained in wiretapped conversations); U.S. v. Dawson, 556 F.Supp. 418, 422 (E.D. Pa., 1982) (finding Special Agent qualified to render expert testimony regarding the use of code words and the meaning of certain language used in drug trafficking); Burton v. U.S., 237 F.3d 490, 499 (5th Cir. 2000) (holding experienced narcotics agents can provide expert testimony regarding the meaning of drug related slang).  Since the main purpose of coded drug language is to mask the meaning of the words through "deliberate obscurity," deciphering coded drug "jargon" is a "specialized body of knowledge" and therefore an appropriate topic for expert testimony.  Gibbs at 211.

In addition, FRE 703 provides, in pertinent part, that:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

SA Brinker's basis of opinion is of a type reasonably relied upon by experts in the narcotics field.  His testimony will rely upon, inter alia, his extensive background and experience in narcotics and Title III investigations, his review of the audio and transcripts of the intercepted wiretap communications, his review of documents and items seized including drugs and drug

- 20 -

paraphernalia, and his discussions, if any, with relevant witnesses to the offenses alleged in the Indictment.  To the extent SA Brinker opines on a given fact or piece of evidence that has not been admitted in evidence prior to his testimony, the government offers such testimony subject to connections under the purview of FRE 104(b), which provides:

> Relevancy conditioned upon fact:  When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

The government will also offer expert testimony of other witnesses, previously noticed to the defense, in connection with handwriting analysis, wiretap procedures and laboratory analysis of drugs.

### D.  Authentication and Identification of the Recorded Conversations

Rule 901(a) of the Federal Rules of Evidence provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  The government will authenticate and identify the recordings by showing that (1) the recordings at trial are exact duplicates of conversations that were lawfully intercepted and recorded at the offices of Immigration and Customs Enforcement ("ICE") pursuant to court order, and (2) the Defendants and their co-conspirators were participants in the conversation.

"[E]vidence describing a process or system used to produce a result and showing that the process or system produces an accurate result" is an approved manner of authenticating evidence.  Fed. R. Evid. 901(b)(9).  In this case, Technical Enforcement Officer James Bracken of ICE is expected to testify about the systems and procedures used at ICE  in general and in this case which produced the recordings presented at trial.  Mr. Bracken is expected to testify about the computer system used to intercept and record the phone calls in this and other cases at ICE. With this witness, a sufficient foundation will be laid to authenticate the recordings.  The

government need not call the person who monitored each phone call.  See, eg. United States v. Green, 175 F.3d 822, 830 (10th Cir. 1999) (foundation laid through case agent and technical supervisor); United States v. Rengifo, 789 F.2d 975, 978-979 (1st Cir. 1986) (case supervisor); United States v. Cortellesso, 663 F.2d 361 (1st Cir. 1981) (same); United States v. Brown, 692 F.2d 345 (5th Cir. 1982); United States v. Millan, 817 F.Supp. 1072, 1080 (S.D.N.Y. 1993).

The Government expects to identify the speakers on the recordings as those of the Defendants and their co-conspirators through the testimony of cooperating defendants, as well as law enforcement officers who are familiar with the Defendants and their voices through monitoring the wire, listening to hours of the recordings, participating in surveillance, and observing and listening to the Defendants speak to other law enforcement officials following their arrest.  This manner of authentication is approved by Rule 901(b)(5) as providing appropriate identification and authentication.  ( "Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.")[3] See also Government of the Virgin Islands v. Martinez, 847 F.2d 125, 128-129 (3d Cir. 1988); Rengifo, 789 F.2d at 983-984.  While the Government expects to authenticate the voice identification through a witness with extensive experience in this case, only minimal familiarity is required to establish voice identification.  United States v. Mansouri, 304 F.3d 635, 665 (7th Cir. 2002) (voice identification sufficient even where witness identified defendant's voice based on witnessing a single court proceeding).

**E.  Transcripts in Evidence**

Almost all of the recorded conversations in the case are in English.  As such, the Government intends to play all of the conversations so the jury can hear the evidence first hand

---

3. The Government expects to introduce additional authentication evidence, including voice identification from other witness(es) and testimony that certain cellular phone that were subject to the wiretap were recovered from the Defendants.

and properly evaluate voice tone and inflection.  In addition, a translation/transcription service has prepared English transcripts of all recordings (which have been provided to the Defendants). The Government will seek admission of both the recordings and the transcripts.  The rationale for this request is to aid the jury during its deliberations.   With the transcripts in evidence, the jury will have the ability to quickly ascertain the content of a particular conversation without the necessity of finding and re-playing an audio portion of the disc containing the wiretap intercepts. Moreover, it is anticipated that once the Government successfully lays a proper foundation for the admission of the audio tapes, that the Defendants will stipulate to the accuracy and authenticity of the English language transcription.

The Third Circuit has held that it is appropriate for a district court to permit a jury that is listening to recordings made in English to follow along with a transcript and to take those transcripts into the jury room during deliberations so long as there is "nothing in the record to indicate that the jury relied improperly on the transcript or that the transcript contained inaccuracies that would substantially affects defendant's rights in the event the jury had relied upon it."  United States v. Pecora, 798 F.2d 614, 631 (3d Cir. 1986); see United States v. O'Grady, 280 Fed. Appx. 124, 131 (D.N.J. 2008) (J. Martini); see also United States v. Sanchez-Gonzalez, 294 F.3d 563, 567-568 (3d Cir. 2002) (upholding admission of English language transcripts translated from taped Spanish language conversations).  Other Circuits are in agreement with the Third Circuit on this issue.  See United States v. Morales-Madera, 352 F.3d 1, 8-9 (1st Cir. 2003) ("In ordinary circumstances, the district court does not abuse its discretion in allowing the jury to use the transcripts [of conversations in English] during deliberations."), United States v. Koska, 443 F.2d 1167, 1168 (2d Cir. 1971) (permitting a transcript of an English recording to go into the jury room when a limiting instruction was given).  To assure that

the jury does not improperly rely on the transcripts during trial or deliberations, the Government

will request that the Court give a limiting instruction to the jury.[4]

### F. Self Authenticating Records

#### 1. Public Records

The United States may offer into evidence certified copies of certain public

records.  Such records are self-authenticating and are admissible pursuant to Rules 902(4) and

803(8), Fed. R. Evid.  See United States v. Neff, 615 F.2d 1235, 1241-42 (9th Cir.), cert. denied,

447 U.S. 925 (1980) (certified IRS records); United States v. Farris, 517 F.2d 226, 228 (7th Cir.),

cert. denied, 423 U.S. 892 (1975) (certified IRS records); United States v. Stone, 604 F.2d 922,

924-25 (5th Cir. 1979) (certified Treasury Department record).  The United States may also

introduce testimony as to the absence of entries in the Government's records, public recording

offices, and the like.  Such evidence is admissible under Rules 902(4), 803(6), 803(7), and

803(10), Fed. R. Evid.  See United States v. Spine, 945 F.2d 143, 148-149 (6th Cir. 1991).

#### 2. Business Records

The Government also anticipates that part of its evidence may include business

records.  Such records, kept in the regular course of business, are admissible as a hearsay

exception pursuant to Rule 803(6), Fed. R. Evid  It is not necessary to identify, locate, or call as

a witness the person who made or kept the records at issue.  United States v. Sokolow, 91 F.3d

---

4.  In Koska, 443 F.2d at 1168, the Second Circuit approved of the following limiting
instruction: "Now let me tell you, further, that although the lawyers have agreed on this
transcript as being accurate ... it is true in this instance, as in all others, that you, the members of
the jury, are the ultimate deciders of the facts, and let me particularize what that means in this
specific context: If at any line of this typed transcript you together hear on the tape something
different from what the lawyers have agreed it says, it is your hearing that controls, not mine, not
theirs. They are not the triers of fact, neither am I. You are. Now, I am not saying that that will
happen, but it could happen, because if my information is correct; some of these portions of the
tape are not easy to hear or easy to decipher with your ears, and it is your senses and your
judgment about that that ultimately control, and that applies here and everywhere in the case; if
there are any exceptions to that, it is my job to tell you about them."

396,403 (3rd Cir. 1996); United States v. Keplinger, 776 F.2d 678, 693 (7th Cir. 1985), cert. denied, 476 U.S. 1183 (1986).

These documents will be introduced by document custodians or other "qualified witnesses" competent to describe the manner in which such records are made and kept, as required by Rule 803(6), Fed. R. Evid.  A qualified witness is simply one who can explain and be cross-examined about the record-keeping system of the organization and can testify that the requirements of Rule 803(6) are met. United States v. Iredia, 866 F.2d 114, 120 (5th Cir. 1989), cert. denied, 492 U.S. 921 (1989); United States v. Barson, 434 F.2d 127, 128 (5th Cir. 1970) (former custodian of records qualified to introduce business records).

In order to expedite the trial process, the Government will attempt to negotiate stipulations with counsel for the Defendants with regard to business records sought to be introduced by the United States.  In the event that such stipulations are agreed and entered into, the authenticity of the stipulated records will not be challenged and testimony by documents custodians or other qualified witnesses will therefore not be necessary.

### G.  Records seized from the Defendants are not hearsay.

Records and other physical evidence seized during the execution of search warrants will be offered by the United States as evidence.  The documents may be admitted through the seizing officers as non-hearsay evidence.  See  United States v. Paulino, 13 F.3d 20 (1st Cir. 1994) (possession of a written statement is an adoptive admission of its contents).  See also United States v. Ospina, 739 F.2d 448, 451 (9th Cir. 1985); United States v. Evans, 883 F.2d 496 (6th Cir. 1989); United States v. Marino, 658 F.2d 1120, 1124-25 (6th Cir. 1981).

### H.  Photocopies and Duplicates

Many of the documents and business records the United States intends to introduce as evidence are photostatic copies of the originals.  Under the Federal Rules of Evidence, photostatic copies are admissible as duplicates at trial.  Rule 1001(4) defines

"duplicate" in such a way as to include photocopies, and Rule 1003 provides for the use of duplicates to the same extent as originals, unless there is a genuine question raised as to the authenticity of the originals.

### I.  Charts and Summaries

The Government may seek to introduce summary charts and/or summaries of testimony as demonstrative aids for the jury.  Rule 611(a) permits the use of charts and summaries of testimony and documents already admitted into evidence as testimonial aids. United States v. Blackwell, 954 F.Supp. 944, 972 (D.N.J. 1997); See, United States v. Paulino, 935 F.2d 739, 753 (6th Cir.), cert. denied,502 U.S. 914, 112 S.Ct. 315, 116 L.Ed.2d 257 (1991) (organizational chart of conspirator's roles in drug conspiracy and chart summarizing income from cocaine sales admissible under Rule 611(a); United States v. Pinto, 850 F.2d 927, 935 (2d Cir.) cert. denied, 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988) (the trial judge did not abuse his discretion in determining summary charts would be helpful to the jury and not cumulative; the judge reminde the jury of their responsibility to determine whether the charts accurately reflected the evidence presented.; United States v. Possick, 849 F.2d 332, 339 (8th Cir.1988) (use of demonstrative charts to aid the jury's comprehension is well within the court's discretion); United States v. Gardner, 611 F.2d 770, 776 (9th Cir.1980) (chart in tax evasion case summarizing assets, liabilities and expenditures admissible under Rule 611(a) because it contributed to clarity of presentation to jury and was reasonable method of presenting evidence); United State v. Scales, 594 F.2d 558, 56163 (6th Cir) (chart summarizing charges in indictment and some of the documents in evidence admissible under Rule 611(a)), cert. denied, 441 U.S. 946, 99 S.Ct. 2168, 60 L.Ed.2d 1049 (1979). The Court has discretion to admit the pedagogical summaries into evidence and to submit them to the fact finder.  Olano, 62 F.3d at 1203-04; United States v. Soulard, 730 F.2d 1292, 1300 (9th Cir. 1984); United States v. Baker, 10 F.3d 1374, 1411-12 (9th Cir. 1993), overruled on other grounds by United States v. Nordby, 225 F.3d 1053 (9th Cir. 2000).  The Ninth Circuit has found no abuse of discretion where summary charts

were admitted in evidence.  <u>Gardner</u>, 611 F.2d at 776 (tax evasion); <u>United States v. Johnson</u>, 460 F.2d 20, 22 (9th Cir. 1972) (per curiam) (holding that the trial court did not err when it admitted chart that "simply summarized a series of exhibits which had been previously introduced into evidence without objection"); <u>United States v. Abbas</u>, 504 F.2d 123 (9th Cir. 1974) (no reversible error for admitting chart into evidence where defense had an opportunity to cross-examine the witness with respect to the charts, use similar charts in order to indicate any errors, and present any similar demonstrative evidence in their case-in-chief).

Summary charts, at the Court's discretion, may be admitted once a proper foundation is established connecting the information on the chart with the underlying evidence once the Court ascertains that the charts are based on, and fairly represent, competent evidence. <u>Gordon</u>, 438 F.2d at 876.  "One proper method of laying a foundation for admission of summary charts" is, as here, "admitting the documentation on which the summary is based." <u>Stephens</u>, 779 F.2d at 239.

The defense will have full opportunity to cross-examine the Government's witnesses with respect to the creation of the charts and their underlying bases.  Consequently, the Court may appropriately admit into evidence the testimony of a summary witness and summary charts in this case

In addition, upon proper notice, the Government may elect to use both charts and summaries during the trial pursuant to Rule 1006, Fed. R. Evid.  Such charts and summaries may be introduced as exhibits by the Government and offered into evidence. <u>United States v. Velasquez</u>, 304 F.3d 237, 240 (3rd Cir. 2002) (the use of summaries and charts is proper and Rule 1006 should not be interpreted restrictively as to the "voluminous document" requirement); <u>United States v. Stephens</u>, 779 F.2d 232, 239-40 (5th Cir. 1985); <u>United States v. Bartone</u>, 400 F.2d 459 (6th Cir. 1968), <u>cert. denied</u>, 393 U.S. 1027 (1969).

**J.  Use of Evidence in Opening Statements and Visual Aids in Opening Statements and Closing Arguments**

The Government may request the Court's permission to use exhibits in its opening statement that will later be introduced into evidence.  The Government may also request the Court's permission to use visual aids such as charts during its opening and closing.  The Government hopes that defense counsel will not have any objection to the admission of the exhibits generally or to their use during opening statements specifically.  Should defense counsel question the admissibility of an exhibit that the Government intends to use during its opening statement, upon identification of the exhibit, the Government can present evidence in a pre-trial hearing to determine its admissibility.  See United States v. De Peri, 778 F.2d 963, 979 (3rd Cir. 1985) (the trial court did not abuse its discretion in allowing the government to use a visual aid in its opening statement).  Further, charts outlining the conspiracy "are often employed in complex conspiracy cases to provide the jury with an outline of what the government will attempt to prove."  Id.

**K.  Impeachment by Conviction**

In the event defendants Stewart and Crafton testify at trial, the government intends to use their prior felony narcotics and firearm convictions to attack their credibility in accordance with Federal Rule of Evidence 609.

Defendant Stewart was convicted and sentenced on or about January 21, 1993, in the Superior Court of the State of New Jersey, Essex County, for distributing or possessing with the intent to distribute a controlled dangerous substance on or within 1,000 feet of school property, in violation of N.J.S.A. 2C:35-7.  He was given a sentence of 364 days imprisonment.  On December 15, 1995, defendant Stewart was convicted and sentenced in the Superior Court of the State of New Jersey, Essex County, for (1) distributing or possessing with the intent to distribute a controlled dangerous substance on or within 1,000 feet of school property, in violation of N.J.S.A. 2C:35-7; and (2) conspiracy, in violation of N.J.S.A. 2C:5-2.  He was given

a sentence of five years imprisonment.  On March 7, 1996, defendant Stewart was convicted and sentenced in the Superior Court of the State of New Jersey, Essex County, for (1) distributing or possessing with the intent to distribute a controlled dangerous substance on or within 1,000 feet of school property, in violation of N.J.S.A. 2C:35-7; (2) conspiracy, in violation of N.J.S.A. 2C:5-2; and resisting arrest, in violation of N.J.S.A. 2C:29-2.  He was given a sentence of five years imprisonment which was to run concurrent to the sentence he received on December 15, 1995.

Defendant Crafton was convicted and sentenced on December 2, 1998, in the Superior Court of the State of New Jersey, Essex County, for distributing or possessing with the intent to distribute a controlled dangerous substance on or within 1,000 feet of school property, in violation of N.J.S.A. 2C:35-7.  He was given a sentence of six years imprisonment.  On December 2, 1998, defendant Crafton was also convicted and sentenced relating to two separate indictments in the Superior Court of the State of New Jersey, Essex County.  On one of those, he was convicted and sentenced for (1) receiving stolen property in violation of N.J.S.A. 2C:20-7; (2) distributing or possessing with the intent to distribute a controlled dangerous substance on or within 1,000 feet of school property, in violation of N.J.S.A. 2C:35-7; (3) illegal possession of a handgun, in violation of N.J.S.A. 2C:39-5B; and (4) illegal possession of a rifle or shotgun, in violation of N.J.S.A. 2C:39-5C(1).  He was given a sentence of three years imprisonment which was to run concurrent to the sentence described above.  In relation to the other indictment, defendant Crafton was convicted and sentenced for (1) distributing or possessing with the intent to distribute a controlled dangerous substance on or within 1,000 feet of school property, in violation of N.J.S.A. 2C:35-7; and (2) conspiracy, in violation of N.J.S.A. 2C:5-2.  He was given a sentence of three years imprisonment that was to run concurrent with the sentences described above.

FRE 609 governs the ability of a party to impeach a witness through use of prior convictions.  The rule states, in pertinent part:

(a) **General rule.**  For the purpose of attacking the credibility of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs the prejudicial effect to the accused; and (2) evidence that any witness is convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

(b) **Time limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old . . . is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

For the reasons previously argued herein, the government contends that the probative value of the admission of the Defendants' prior felony narcotics convictions, in the event they testify, substantially outweighs any prejudicial effect

### L.  Use Of Leading Questions On Direct Examination

Rule 611(c), Fed. R. Evid., provides, in pertinent part, that "[w]hen a party calls a hostile witness, ... or a witness identified with an adverse party, interrogation may be by leading question."  Use of the phrase "witness identified with an adverse party" was designed to enlarge that category of persons beyond simply the adverse or its officer, director or managing agent. Fed. R. Evid. 611(c) advisory committee's notes.

The fact that a witness is identified with an adverse party is sufficient to permit direct examination by leading questions, even where there is no actual hostility.  E.g., Haney v. Mizell Memorial Hospital, 744 F.2d 1467, 1477-78 (11th Cir. 1984) (approving plaintiff's direct

examination by leading questions, of nurse employed by defendant hospital and present, those who have worked closely with a party in the past, and those who participated with a party in the past, and those who participated with a party in the conduct which gives rise to the litigation are examples of witnesses for whom the use of leading questions by the opposing party during direct examination has been approved); Winant v. Bostic, 5 F.3d 767, 773 (4th Cir. 1993) (approving leading interrogation of opposing party's former sales agent); Ellis v. City of Chicago, 667 F.2d 606, 612-13 7th Cir. 1981) (police officer employees of defendant municipality who had worked with defendant officers could be examined by leading questions because identified with adverse party); Perkins v. Volkswagen of America, Inc., 596 F.2d 681 (5th Cir. 1979) (plaintiff should have been permitted to conduct direct examination of defendant's employee by leading questions).

Rule 611(c) explicitly permits the use of leading questions on direct examination of a "hostile" witness.  This provision was intended to permit direct examination by leading questions when the witness is hostile, unwilling or biased, even though not identified with an adverse party's interest in the litigation. Fed. R. Evid. 611(c) advisory committee's notes.  Thus, the government may interrogate the girlfriend of a criminal defendant with leading questions when she is called as a government witness.  United States v. Hicks, 748 F.2d 854, 859 (4th Cir. 1984).  And, similarly, the government's leading, direct examination of a criminal defendant's close friend is appropriate, even where there is no contemptuous or surly behavior by the witness.  United States v. Brown, 603 F.2d 1022 (1st Cir. 1979).

In the instant case, the Government's witness list may include friends and former co-workers of the Defendants.  Such witnesses are either "identified with an adverse party" or "hostile" within the meaning of Rule 611(c).  It is the Government's intention to seek leave of the Court to conduct direct examination of some or all of such witnesses by leading question.

### M.  Presentation of Witnesses

The government's case in chief consists, in large part, of approximately 100 intercepted phone calls.  The Government will play a majority of these recordings during the testimony of SA Brinker, whose opinions will be based primarily upon his experience in other similar wiretap and narcotics investigations.  The Government does not anticipate that SA Brinker will rely upon contemporaneous surveillance reports prepared in connection with the wiretap intercepts.  As such, he may not testify about events contained in those reports. Therefore, if the expert interprets events occurring on the wiretap on a particular date and time, it would be extremely helpful to the jury's understanding of the case for the relevant surveillance witnesses to intermingle their testimony about the events they witnessed simultaneously with the calls being interpreted by the expert witness.  Accordingly, in order to facilitate and to ensure the orderly presentation of the evidence, and to avoid duplicity in the government's presentation of the wiretap intercepts, the government requests permission pursuant to FRE 611(a) to call certain witnesses to the stand multiple times.

FRE 611(a) provides, in pertinent part, that:

Control by the Court.  The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

It is well settled that the mode and order of interrogation and presentation of evidence are matters within the discretion of the trial court. United States v. Jackson, 549 F.2d 517 (8th Cir. 1977); Fed.R.Evid. 611(a).   In Jackson, a complicated narcotics conspiracy case, the government was permitted to present the testimony of an undercover agent (who was involved in multiple transactions in the case) in such a manner as to recall him from time to time in order to allow him to testify about events in chronological order.  The court held that this did not diminish the defendants' right to cross-examination or prejudice their rights to a fair trial. Id.

*See also*, United States v. Butera, 677 F.2d 1376 (11ᵗʰ Cir. 1982) (holding that the trial court did not abuse its discretion or prejudice the defense by permitting the sequential presentation of testimony by an investigating officer in a narcotics prosecution, as the officer was subject to cross-examination at each appearance on the witness stand as to matters covered during that portion of direct examination). In fact, the Jackson court stated the manner in which the undercover officer's testimony was offered "lent a praiseworthy degree of order to [a] complicated trial" and further stated that "this procedure is commended as one way to clearly present an organized factual recital in an extended conspiracy trial". Jackson, 549 F.2d at 529 (emphasis added).

In accordance with established precedent, therefore, the Government requests permission to recall its primary narcotics expert and various law enforcement officers who conducted surveillance on more than one occasion in order to present to the jury a chronological and orderly recitation of the facts of this case. This procedure will also save time and judicial resources as it will obviate the necessity for re-playing and reviewing wiretap intercepts prior to each surveillance witness' expected testimony. The defense should be afforded the opportunity to cross examine the witnesses each time they take the stand on the matters testified to on direct.

**N. Present Sense Impressions**

As set forth above, a portion of the Government's presentation of the evidence will involve the testimony of law enforcement officers who participated in surveillance activities. In order to keep the events witnessed in the context of the rest of the Government's proof, it may be necessary for certain witnesses to testify to events observed by other individuals and relayed to the testifying witnesses by way of radio transmission or report. These statements are admissible as present sense impressions pursuant to Fed. R. Evid. 803(1), because they are statements describing an event made while the declarant was perceiving the event, or immediately thereafter. Testimony regarding another law enforcement officer's surveillance

- 33 -

observations are admissible pursuant to Rule 803(1).  E.g United States v. Clarke, 24 F.3d 257, 267-268 (D.C. Cir. 1994) (affirming admission of tape of police broadcasts during surveillance as present sense impressions); United States v. Gil, 58 F.3d 1414, 1422 (9th Cir. 1995) (affirming admission of "note-takers" who testified regarding the observations of other surveillance officers); United States v. Ruiz, 249 F.3d 643, 646 (7th Cir. 2001).

Even if the statements are deemed inadmissible hearsay, they should still be admissible because the observations of some officers are admissible for the non-hearsay purposes of explaining why the testifying officer took certain actions.  United States v. Lovelace, 123 F.3d, 650, 652 (7th Cir. 1997).

The Government anticipates that all testimony admitted pursuant to this rule will be regarding statements of witnesses who will testify at some point during the trial, and thus be subject to cross examination.  If the statements of any non-testifying witnesses are admitted at trial, the Government will arrange for the declarant's availability should the Defendants wish to conduct cross examination.

### O.  Reciprocal Discovery

Defendants have been provided substantial Rule 16 discovery and access to all of the discoverable documents and tangible items in this case.  The Government has provided thousands of intercepted conversations, produced line sheets of the calls, provided draft transcripts in order to assist the Defendants with trial preparation, and even provided a computer CD containing all calls in the case.  The Government has moved for reciprocal discovery.  To date, no discovery has been provided by Defendant Stewart.  As a consequence, the Government will move to exclude any defense evidence not produced in reciprocal discovery, including the testimony of any defense experts.

Respectfully submitted,
 RALPH J. MARRA, JR.
Acting United States Attorney


s/ Matthew E. Beck_____
By: MATTHEW E. BECK
Assistant U.S. Attorney


Dated: February 24, 2009